**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| IN RE TRISTAR ESPERANZA PROPERTIES, LLC, <br><br>*Debtor*, | No. 13-60023 <br><br> BAP No. 12-1340 |
| PENSCO TRUST COMPANY, a New Hampshire Company; JANE O'DONNELL, <br><br>*Appellants*, <br><br> v. <br><br> TRISTAR ESPERANZA PROPERTIES, LLC, a California Limited Liability Company, <br><br>*Appellee*. | OPINION |

Appeal from the Ninth Circuit
Bankruptcy Appellate Panel
Pappas, Klein, and Dunn, Bankruptcy Judges, Presiding

Argued and Submitted
February 11, 2015—Pasadena, California

Filed April 2, 2015

Before: Consuelo M. Callahan, Paul J. Watford,
and John B. Owens, Circuit Judges.

Opinion by Judge Owens

## SUMMARY[*]

### Bankruptcy

On appeal from the Bankruptcy Appellate Panel, the panel affirmed the bankruptcy court's summary judgment in an adversary proceeding to subordinate a creditor's claim based on a minority interest in a chapter 11 debtor.

The panel held that the claim was subject to mandatory subordination under 11 U.S.C. § 510(b) because it was a claim for damages arising from the purchase or sale of a security of the debtor.

### COUNSEL

Jane O'Donnell (argued), Sacramento, California, for Appellants.

Ian S. Landsberg (argued), Summer Saad, and Brigitte Gomelsky Kay, Landsberg & Associates, Woodland Hills, California, for Appellee.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## OPINION

OWENS, Circuit Judge:

Jane O'Donnell[1] challenges the decisions of the bankruptcy court and the Bankruptcy Appellate Panel (BAP) that her claim based on a minority membership interest in the debtor, Tristar Esperanza Properties, LLC (Tristar), is subject to mandatory subordination under the Bankruptcy Code. Before the bankruptcy petition was filed, Tristar failed to pay O'Donnell the amount an arbitrator awarded for the repurchase of her membership interest, and O'Donnell sought and received a money judgment for that amount in state court. Because the claim is "for damages arising from the purchase or sale" of "a security of the debtor," 11 U.S.C. § 510(b), we affirm.

## BACKGROUND

In 2005, O'Donnell paid $100,000 for an approximately 15 percent membership interest in Tristar, a single-asset real estate company. In July 2008, O'Donnell exercised her right to withdraw from the LLC, and Tristar elected to purchase her membership interest based on the valuation procedure of the operating agreement. When the parties failed to agree on the proper valuation of O'Donnell's membership interest, O'Donnell brought a contractual arbitration action. On March 16, 2010, the arbitrator ruled in O'Donnell's favor and provided her "a net award of damages." His final award,

---

[1] Appellant Pensco Trust Company, which holds O'Donnell's investment retirement account, is represented by O'Donnell and has made no independent appearance. For clarity, Appellants will be referred to herein as "O'Donnell."

including fees, costs, and interest, issued on June 3, 2010, and totaled $410,472.68. Tristar failed to pay, and on October 1, 2010, O'Donnell sought and received a state-court judgment against Tristar for $415,937.68 plus interest.

Tristar filed a chapter 11 bankruptcy petition on August 8, 2011. O'Donnell filed a timely claim against Tristar based on her state-court judgment, and Tristar filed an adversary proceeding against O'Donnell seeking to subordinate her claim under § 510(b) and (c) or to avoid her claim as a preference. The bankruptcy court entered summary judgment in favor of Tristar on the § 510(b) claim, and in favor of O'Donnell on all other claims. The BAP affirmed, reasoning that "the claim is so firmly rooted in O'Donnell's equity status that subordination is mandatory." *In re Tristar Esperanza Props., LLC*, 488 B.R. 394, 404 (B.A.P. 9th Cir. 2013).

## STANDARD OF REVIEW

We review decisions of the BAP de novo, reviewing independently the bankruptcy court's ruling on appeal from the BAP. *In re Burnett*, 435 F.3d 971, 975 (9th Cir. 2006).

## DISCUSSION

Our inquiry begins with the language of § 510(b): "a claim arising from rescission of a purchase or sale of a security of the debtor . . . [or] for damages arising from the purchase or sale of such a security . . . shall be subordinated to all claims or interests that are senior to or equal the claim or interest represented by such security." 11 U.S.C. § 510(b).

The parties agree that O'Donnell's membership interest in Tristar is a "security of the debtor." They are correct. Among the non-exclusive list of items defined as securities under the Bankruptcy Code, "[an] LLC interest either qualifies as a 'transferable share' or falls within the broad residual category." *In re SeaQuest Diving, LP*, 579 F.3d 411, 418 (5th Cir. 2009) (citing 11 U.S.C. § 101(49)(A)(viii), (xiv)). Where the parties disagree is whether O'Donnell's claim is one for "damages arising from the purchase or sale" of that security.[2]

## A.  Damages

O'Donnell insists that her claim is not for damages, but for a fixed, admitted debt. The term "damages," she argues, implies some sort of actionable wrongdoing that is lacking from her claim against Tristar: that is, "[d]amages are given as a compensation . . . for an injury actually received," *Birdsall v. Coolidge*, 93 U.S. 64, 64 (1876).

We confronted similar arguments in both of our prior encounters with the damages clause of § 510(b). Each time, we held that the statute sweeps broadly. It extends beyond the securities fraud claims that the House of Representatives explicitly discussed in its report, *In re Betacom of Phx., Inc.*,

---

[2] O'Donnell argues that Tristar should be estopped from seeking subordination of her claim because it admitted before the arbitrator that it owes her a debt. Judicial estoppel does not apply because there is no inconsistency between Tristar agreeing that it owes a debt to O'Donnell on the one hand, and seeking subordination of that debt on the other. *See New Hampshire v. Maine*, 532 U.S. 742, 749 (2001). Collateral estoppel does not apply because the issue of subordination under § 510(b) was not (and could not have been) decided by the arbitrator or the state court. *See In re Bugna*, 33 F.3d 1054, 1057 (9th Cir. 1994).

240 F.3d 823, 829 (9th Cir. 2001) (citing H.R. Rep. No. 95-595, at 195 (1977)), and reaches even ordinary breach of contract claims so long as there is a sufficient nexus between the claim and the purchase of securities, *In re Am. Wagering, Inc.*, 493 F.3d 1067, 1072 (9th Cir. 2007). Our sister circuits share our broad interpretation of § 510(b). *See SeaQuest Diving*, 579 F.3d at 423–24; *In re Med Diversified, Inc.*, 461 F.3d 251, 254–55 (2d Cir. 2006); *In re Telegroup, Inc.*, 281 F.3d 133, 143–44 (3d Cir. 2002).

We see no reason to stray from this broad interpretation here. O'Donnell's basic claim is that Tristar failed to pay her the amount she was due under Tristar's operating agreement for the purchase of her membership interest. This is a claim for damages for Tristar's breach of contract. Although she asserts that she did not seek damages before the arbitrator, but solely a determination of the fair market value of her membership interest, O'Donnell herself has never treated the arbitrator's award as a mere appraisal. The arbitrator provided an "award of damages," which O'Donnell brought to state court and converted to a money judgment. She recorded the judgment and sought to attach the rents from Tristar's property to satisfy the judgment.

Moreover, O'Donnell's view that the term "damages" necessarily excludes fixed, admitted debts would lead to a result manifestly at odds with the intent of Congress. It would result in most judgments being insulated from subordination, because once a final judgment is issued, the amount owed is generally fixed and no longer the subject of dispute. Nothing suggests that Congress intended to distinguish claims based on judgments or other fixed debts

from unliquidated claims arising from the same wrong.[3] Rather, Congress sought to subordinate claims, whether liquidated or not, that unfairly shift to creditors risks associated with stock ownership. *See Betacom*, 240 F.3d at 829. Accordingly, O'Donnell's claim falls under the broad umbrella of damages.

## B. Arising from the Purchase or Sale

Next, O'Donnell argues that her claim does not arise from the purchase or sale of securities, because she converted her equity interest to a debt claim before Tristar filed its bankruptcy petition and thus subordination does not effectuate Congress's intent in passing § 510(b). The status of a claim, she argues, must be judged from the date of the bankruptcy petition.

It is true that O'Donnell was no longer an equityholder in Tristar when the bankruptcy petition was filed in 2011. In 2008, she exercised her contractual right to withdraw from the LLC, and Tristar exercised its contractual right to purchase her membership interest. After that time, O'Donnell no longer enjoyed the rights and privileges of LLC membership, including the right to share in the company's profits. She was a creditor, not an equityholder, on the date of the petition.

---

[3] If Congress wished to distinguish between fixed, liquidated claims and disputed, unliquidated claims for purposes of § 510(b), it could easily have done so. Instead, it merely used the term "claim." "The term 'claim' means . . . right to payment, *whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent*, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured . . . ." 11 U.S.C. § 101(5)(A) (emphasis added).

At least one bankruptcy court has adopted O'Donnell's position and held that the status of the claim on the date of the petition controls the subordination question. *See In re MarketXT Holdings Corp.*, 361 B.R. 369, 389 (Bankr. S.D.N.Y. 2007). "It is black letter law," the court reasoned, "that claims are analyzed as of the date of the filing of a petition, not as of a hypothetical date in the past." *Id.* (citing 5 Lawrence P. King et al., *Collier on Bankruptcy* ¶ 506.04 (15th ed. rev. 2006)). Because the creditor held a judgment based on notes issued following the creditor's exercise of the liquidation preference of its preferred stock, it was a creditor on the date of the petition and thus its claim was not subject to subordination. *Id.* at 389–90. Various other courts have followed similar reasoning in refusing to subordinate certain creditors' claims even though their debt instruments or judgments derived from an equity interest. *See, e.g.*, *In re Cybersight LLC*, No. 02-11033, Civ. A. 04-112 JJF, 2004 WL 2713098, at \*4 (D. Del. Nov. 17, 2004); *In re Swift Instruments, Inc.*, No. NC-11-1426-DHSa, 2012 WL 762833, at \*7–8 (B.A.P. 9th Cir. Mar. 8, 2012); *In re Mobile Tool Int'l, Inc.*, 306 B.R. 778, 782 (Bankr. D. Del. 2004).

These cases suggest that to be subject to subordination, the claimant must, at the very least, enjoy the rights and privileges of equity ownership on the date of the bankruptcy petition. *See Mobile Tool Int'l*, 306 B.R. at 782. We rejected that principle in *Betacom*, holding that a claimant who bargained for an equity position was subject to subordination, even though he never enjoyed the benefits of equity ownership. *Betacom*, 240 F.3d at 829–30.

Furthermore, we have suggested that the status of the claim on the date of the petition does not end the § 510(b) inquiry. In *Betacom*, the bankruptcy court subordinated

claims based on certain promissory notes without explanation, and the district court reversed the bankruptcy court without mentioning those claims. *Id.* at 827, 832. Even though the claims were based on promissory notes—fixed, admitted debts at the time of the petition—we remanded for determination of the origin of the notes, instructing the lower court that "[i]f the promissory note claims are linked to the [issuance of securities], they should be subordinated." *Id.* at 832. And in *American Wagering*, we determined that a judgment based on contract claims of a consultant who never bargained for an equity position in the debtor was not subject to subordination. 493 F.3d at 1072–73. We took time to clarify that the judgment—clearly a debt claim at the time of the petition—did not derive from an equity interest, and we implied that the "conversion of an equity interest into a money judgment" would render the claim subject to subordination. *Id.* at 1072 n.2.

The critical question for purposes of § 510(b), then, is not whether the claim is debt or equity at the time of the petition, but rather whether the claim *arises from* the purchase or sale of a security. The claim must be subordinated if there is a sufficient "nexus or causal relationship between the claim and the purchase" or sale of securities. *Am. Wagering*, 493 F.3d at 1072 (quoting *Telegroup*, 281 F.3d at 138).

The primary weakness in O'Donnell's argument is that, in her attempt to effectuate her vision of congressional intent, she overlooks the statutory text. Section 510(b) does not ask what the claim *is*, but what it *arises from*. We have long interpreted "arises from" broadly, and not as the "snapshot in time" that O'Donnell urges:

> The word "arising" connotes, in ordinary
> usage, something broader than causation . . . .
> "Arising out of" are words of much broader
> significance than "caused by." They are
> ordinarily understood to mean "originating
> from," "having its origin in," "growing out
> of" or "flowing from" or in short, "incident to,
> or having connection with . . . ."

*Underwriters at Lloyd's of London v. Cordova Airlines, Inc.*,
283 F.2d 659, 664 (9th Cir. 1960) (latter alteration in
original) (quoting *Red Ball Motor Freight, Inc. v. Emp'rs
Mut. Liab. Ins. Co. of Wis.*, 189 F.2d 374, 378 (5th Cir.
1951)); *see also Cont'l Cas. Co. v. City of Richmond*,
763 F.2d 1076, 1080 (9th Cir. 1985) (reviewing case law that
interprets "arising from" more broadly than "caused by").

With this definition established, it is clear that
O'Donnell's claim *arises from* the sale of a security of the
debtor. Her claim originates from the failed sale of her
membership interest and Tristar's breach of the operating
agreement's provisions regarding repurchase of membership
interests. The direct causal link between O'Donnell's claim
and the purchase and sale of an equity interest leaves no
doubt as to whether her claim for damages "flows from" the
purchase or sale of a security of the debtor.

Our straightforward reading of the "arises from" language
in § 510(b) comports with congressional intent. As we have
said, "[t]here are two main rationales for mandatory
subordination: 1) the dissimilar risk and return expectations
of shareholders and creditors; and 2) the reliance of creditors

on the equity cushion provided by shareholder investment." *Betacom*, 240 F.3d at 830. Although O'Donnell did not enjoy the benefits of equity ownership on the date of the petition, she bargained for an equity position and thus embraced the risks that position entails. *See Am. Wagering*, 493 F.3d at 1071–72 ("One of the primary purposes of section 510(b) . . . is to prevent disappointed shareholders . . . from recouping their investment in parity with unsecured creditors."). And O'Donnell's investment was a part of Tristar's equity cushion on which creditors would have relied in choosing to extend credit. Thus, we conclude that O'Donnell's claim is among those Congress sought to reach in enacting § 510(b). If Congress had intended for subordination to turn on a claim's status at the time of the bankruptcy filing, rather than the claim's origin, it could easily have written § 510(b) to reflect that "snapshot" intent. It did not, and it had good reasons for that.[4]

---

[4] We note that our decision today does not address the BAP's assumption that a claim arising from an "old and cold" transaction converting an equity interest into debt may avoid subordination if the claim had "long been treated as part of the enterprise's debt structure." *Tristar Esperanza Props.*, 488 B.R. at 404. In her briefing and at oral argument, O'Donnell abandoned any argument that her claim was too "old and cold" to be subordinated. She argued only that so long as the claimant held a fixed, admitted debt at the time of the petition, § 510(b) could not apply. Furthermore, we find no error in the BAP's determination that O'Donnell's claim was never considered as part of Tristar's debt structure, but rather was "sufficiently proximate in time" to the bankruptcy filing "to warrant the conclusion that this is an effort by equity to capture . . . profits via a judgment for money damages." *Id.* We need not determine whether an equity-to-debt conversion may ever be so "old and cold" that the causal link to the purchase or sale of securities is severed and the claim no longer arises from the purchase or sale.

Because O'Donnell's claim arises from the purchase or sale of a security of the debtor, the bankruptcy court properly subordinated it.

**AFFIRMED**.