**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

IN RE BORDER INFRASTRUCTURE
ENVIRONMENTAL LITIGATION,

CENTER FOR BIOLOGICAL DIVERSITY,
                *Plaintiff-Appellant*,

and

DEFENDERS OF WILDLIFE, a nonprofit
conservation organization; SIERRA
CLUB, a nonprofit public benefit
corporation; ANIMAL LEGAL
DEFENSE FUND; PEOPLE OF THE
STATE OF CALIFORNIA, by and
through Xavier Becerra, Attorney
General; CALIFORNIA COASTAL
COMMISSION,
                *Plaintiffs*,

v.

U.S. DEPARTMENT OF HOMELAND
SECURITY; U.S. CUSTOMS AND
BORDER PROTECTIONS; KIRSTJEN
NIELSEN, Secretary, in her official
capacity; KEVIN K. MCALEENAN,

No. 18-55474

D.C. Nos.
3:17-cv-01215-
GPC-WVG
3:17-cv-01873-
GPC-WVG
3:17-cv-01911-
GPC-WVG

Commissioner, in his official capacity,

*Defendants-Appellees.*

IN RE BORDER INFRASTRUCTURE ENVIRONMENTAL LITIGATION,

CENTER FOR BIOLOGICAL DIVERSITY; PEOPLE OF THE STATE OF CALIFORNIA, by and through Xavier Becerra, Attorney General; CALIFORNIA COASTAL COMMISSION,

*Plaintiffs*,

and

DEFENDERS OF WILDLIFE, a nonprofit conservation organization; SIERRA CLUB, a nonprofit public benefit corporation; ANIMAL LEGAL DEFENSE FUND,

*Plaintiffs-Appellants*,

v.

U.S. DEPARTMENT OF HOMELAND SECURITY; U.S. CUSTOMS AND BORDER PROTECTIONS; KIRSTJEN NIELSEN, Secretary, in her official capacity; KEVIN K. MCALEENAN,

No. 18-55475

D.C. Nos.
3:17-cv-01215-GPC-WVG
3:17-cv-01873-GPC-WVG
3:17-cv-01911-GPC-WVG

Commissioner, in his official
capacity,

*Defendants-Appellees.*

---

IN RE BORDER INFRASTRUCTURE
ENVIRONMENTAL LITIGATION,

CENTER FOR BIOLOGICAL DIVERSITY;
DEFENDERS OF WILDLIFE, a nonprofit
conservation organization; SIERRA
CLUB, a nonprofit public benefit
corporation; ANIMAL LEGAL
DEFENSE FUND,

*Plaintiffs*,

and

PEOPLE OF THE STATE OF
CALIFORNIA, by and through Xavier
Becerra, Attorney General;
CALIFORNIA COASTAL COMMISSION,

*Plaintiffs-Appellants*,

v.

U.S. DEPARTMENT OF HOMELAND
SECURITY; U.S. CUSTOMS AND
BORDER PROTECTIONS; KIRSTJEN
NIELSEN, Secretary, in her official
capacity; KEVIN K. MCALEENAN,

No. 18-55476

D.C. Nos.
3:17-cv-01215-
GPC-WVG
3:17-cv-01873-
GPC-WVG
3:17-cv-01911-
GPC-WVG

OPINION

Commissioner, in his official
capacity,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Southern District of California
Gonzalo P. Curiel, District Judge, Presiding

Argued and Submitted August 7, 2018
Pasadena, California

Filed February 11, 2019

Before:  M. Margaret McKeown, Consuelo M. Callahan,
and Jacqueline H. Nguyen, Circuit Judges.

Opinion by Judge McKeown;
Dissent by Judge Callahan

# SUMMARY[*]

### Environmental Law / Homeland Security

The panel affirmed the district court's summary judgment entered in favor of the U.S Department of Homeland Security ("DHS") in cases involving challenges by the State of California and environmental groups to DHS's authority to expedite construction of border barriers near San Diego and Calexico, California, and the Secretary of DHS's August and September 2017 waivers of applicable environmental laws.

Pursuant to Executive Order 13,767, the Secretary of DHS invoked section 102(c) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") to waive federal laws with respect to border barrier construction projects along the border between the United States and Mexico.

The plaintiffs' "*ultra vires* claims" alleged that DHS exceeded its statutory authority in working on the border barrier projects and issuing the related waivers in violation of the Administrative Procedure Act ("APA"). The plaintiffs' "environmental claims" alleged that in planning and building the border barrier projects, DHS violated federal environmental laws.

As a threshold matter, the panel held that they had jurisdiction to consider the "predicate legal question" of

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

whether IIRIRA authorized the contested projects.  Because neither IIRIRA nor the APA barred the panel's review, the panel turned to the merits of the *ultra vires* and environmental claims.

The panel held that the plain text of section 102(a) of IIRIRA granted DHS authority to construct the border barrier projects, and that grant of authority was not limited by section 102(b) of IIRIRA.  The panel concluded that the district court correctly granted DHS summary judgment on the *ultra vires* claims.  The panel further held that the environmental claims were precluded by the Secretary's waiver of the National Environmental Policy Act, the Coastal Zone Management Act, and the APA.  The panel held that it lacked jurisdiction to consider any argument challenging the waivers themselves.

Judge Callahan dissented because she would read section 102 of IIRIRA as limiting review of the district court's decision to review by certiorari in the Supreme Court; and she would, accordingly, dismiss the appeals.

---

## COUNSEL

Noah Golden-Krasner (argued), Julia Forgie, Jessica B. Strobel, Baine P. Kerr, Janelle M. Smith, and John Applebaum, Deputy Attorneys General; David G. Alderson, Michael P. Cayaban, and Edward H. Ochoa, Supervising Deputy Attorneys General; Robert W. Byrne, Senior Assistant Attorney General; Xavier Becerra, Attorney General; Office of the Attorney General, Los Angeles, California; for Plaintiffs-Appellants People of the State of California and California Coastal Commission.

Brian Segee and John Peter Rose, Center for Biological Diversity, Los Angeles, California; Anchun Jean Su and Brendan Cummings, Center for Biological Diversity, Oakland, California; for Plaintiff-Appellant Center for Biological Diversity.

Anthony T. Eliseuson, Animal Legal Defense Fund, Chicago, Illinois; Sara K. Hanneken, Animal Legal Defense Fund, Portland, Oregon; for Plaintiff-Appellant Animal Legal Defense Fund.

Jason Rylander, Defenders of Wildlife, Washington, D.C., for Plaintiff-Appellant Defenders of Wildlife.

Gloria D. Smith, Sierra Club, Oakland, California, for Plaintiff-Appellant Sierra Club.

H. Thomas Byron III (argued), Courtney L. Dixon, and Benjamin M. Schultz, Appellate Staff; Adam L. Braverman, United States Attorney; Civil Division, United States Department of Justice, Washington, D.C.; for Defendants-Appellees.

## OPINION

McKEOWN, Circuit Judge:

Under the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), the Secretary of the Department of Homeland Security ("DHS") has long had the authority "to install additional physical barriers and roads . . . in the vicinity of the United States border . . . ." IIRIRA

§ 102(a).**[1]**  The Secretary also "ha[s] the authority to waive all legal requirements" that, in the "Secretary's sole discretion," are "necessary to ensure expeditious construction" of those barriers and roads.  *Id.* § 102(c)(1).

This appeal stems from a challenge by California and multiple environmental groups to the agency's authority to expedite construction of border barriers near San Diego and Calexico, California, and the Secretary's August and September 2017 waivers of applicable environmental laws.  As a threshold matter, we have jurisdiction to consider the "predicate legal question" of whether IIRIRA authorizes the contested projects.  Because the projects are statutorily authorized and DHS has waived the environmental laws California and the environmental groups seek to enforce, we affirm the district court's grant of summary judgment to DHS.

## BACKGROUND

On January 25, 2017, President Donald J. Trump issued Executive Order 13,767, directing federal agencies to "deploy all lawful means to secure the Nation's southern border."  82 Fed. Reg. 8793.  A focal point of that directive was "the immediate construction of a physical wall," to be planned, designed, and built "[i]n accordance with existing law, including . . . IIRIRA."  *Id.* at 8793–94.  The "wall" was to be a "secure, contiguous, and impassable physical barrier"

---

**[1]** Pub. L. No. 104-208, Div. C, 110 Stat. 3009-546 (codified as amended at 8 U.S.C. § 1103 note).  All section references are to IIRIRA unless otherwise indicated.  IIRIRA originally granted the Attorney General this authority.  Congress transferred this authority to the DHS Secretary after creating DHS in 2002.

along the "contiguous land border between the United States and Mexico, including all points of entry." *Id.* at 8794.

By March 2017, DHS had begun planning projects carrying out the Executive Order, including two relevant to this appeal:

- The construction and evaluation of wall "prototypes" in San Diego County, California (the "Prototype Project"); and

- The replacement of fourteen miles of primary fencing and fourteen miles of secondary fencing in San Diego County (the "San Diego Project").

On August 2, 2017, the DHS Secretary[2] published in the Federal Register a notice of determination concerning the Prototype Project and the San Diego Project (the "San Diego Waiver"). *See* 82 Fed. Reg. 35,984 (Aug. 2, 2017). The Secretary invoked section 102(c)'s grant of "authority to waive all legal requirements that I, in my sole discretion, determine necessary to ensure the expeditious construction of barriers and roads authorized by section 102 of IIRIRA." *Id.* at 35,984. The San Diego Waiver asserted that the U.S. Border Patrol's "San Diego Sector remains an area of high illegal entry for which there is an immediate need to construct additional border barriers and roads." *Id.* The designated "Project Area"—extending fifteen miles inland from the Pacific Ocean—encompassed the Prototype and San Diego Projects. *Id.* Having determined the action was

---

[2] During this period, John Kelly, Elaine Duke, and Kirstjen Nielsen served as DHS Secretary. Because the identity of the Secretary who initiated any given administrative action is not relevant to the legal issues in this appeal, we simply refer to the "Secretary" or "DHS Secretary."

"necessary," the Secretary invoked section 102(c) to "waive in their entirety" thirty-seven federal laws "with respect to the construction of roads and physical barriers" in the Project Area. *Id.* at 35,985.

On September 12, 2017, the Secretary again invoked section 102's waiver authority in another notice of determination in the Federal Register (the "Calexico Waiver"). *See* 82 Fed. Reg. 42,829 (Sept. 12, 2017). The Calexico Waiver pertained to the replacement of primary fencing along a three-mile segment of the border near Calexico, California (the "Calexico Project"). *Id.* at 42,830. The Secretary asserted that, like the San Diego Sector, the "El Centro Sector [which includes Calexico] remains an area of high illegal entry for which there is an immediate need to construct border barriers and roads," and designated a Project Area for the replacement fencing. *Id.* Again deeming the action "necessary," the Secretary waived twenty-seven federal laws "with respect to the construction of roads and physical barriers" in the Project Area. *Id.*

With one exception, construction on the Prototype, San Diego, and Calexico Projects (collectively "the border barrier projects") has already begun and is either complete or ongoing. Construction on the San Diego secondary-fence replacement project had not begun when DHS filed its Answering Brief. DHS maintains that project is still in the preliminary planning stage, and that the Secretary has not yet determined whether a waiver is necessary.

Three sets of plaintiffs[3] filed lawsuits against the federal government[4] to enjoin the border barrier projects and to declare the San Diego and Calexico Waivers unlawful.  The district court consolidated the suits, finding that they shared common legal and factual issues.  California and the environmental groups asserted three types of claims.  The "*ultra vires* claims" alleged that DHS exceeded its statutory authority in working on the border barrier projects and issuing the related waivers, thus violating the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 *et seq*.  The "environmental claims" alleged that in planning and building the border barrier projects, DHS violated environmental laws.[5]  Finally, the "constitutional claims" alleged that the waivers violated the U.S. Constitution.

On cross-motions, the district court granted summary judgment to DHS.  The district court concluded that IIRIRA's jurisdictional bar, *see* § 102(c)(2)(A), prevented it

---

[3] The Plaintiffs-Appellants (collectively "California and the environmental groups") are: (1) the State of California and the California Coastal Commission (collectively "California"); (2) the Center for Biological Diversity ("CBD"); and (3) the Defenders of Wildlife, the Sierra Club, and the Animal Legal Defense Fund (collectively the "Coalition").

[4] The Defendants-Appellees (collectively "DHS" or "the Government") are: the United States of America; the U.S. Department of Homeland Security; U.S. Customs and Border Protection; Secretary Kirstjen Nielsen, in her official capacity; and Commissioner Kevin K. McAleenan, in his official capacity.

[5] California and the environmental groups alleged that DHS violated the National Environmental Policy Act, 42 U.S.C. § 4321 *et seq.* ("NEPA"), the Coastal Zone Management Act, 16 U.S.C. § 1451 *et seq.* ("CZMA"), and the APA.  DHS acknowledged that it did not comply with NEPA or CZMA requirements.

from hearing the non-constitutional claims. The district court went on to reject the constitutional claims.

California, CBD, and the Coalition each appealed the district court's judgments as to the *ultra vires* and environmental claims, but not their constitutional claims. We consolidated the three appeals.

## ANALYSIS

### I. STANDARD OF REVIEW

We review the district court's grant of summary judgment de novo. *Wolfe v. BNSF Ry. Co.*, 749 F.3d 859, 863 (9th Cir. 2014). We must "determine, viewing the evidence in the light most favorable to the non-moving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law." *Citicorp Real Estate, Inc. v. Smith*, 155 F.3d 1097, 1103 (9th Cir. 1998). In doing so, we do "not weigh the evidence or determine the truth of the matter but only determine whether there is a genuine issue for trial." *Id.*

### II. JURISDICTION

The threshold question is whether we have jurisdiction to hear this appeal. The answer depends on the scope of IIRIRA's jurisdictional bar and direct review provisions.

We begin with the language of the statute, which provides:

> The district courts of the United States shall have exclusive jurisdiction to hear all causes or claims *arising from any action undertaken, or any decision made, by the Secretary of*

*Homeland Security pursuant to paragraph (1).* A cause of action or claim may only be brought alleging a violation of the Constitution of the United States. The court shall not have jurisdiction to hear any claim not specified in this subparagraph.

§ 102(c)(2)(A) (emphasis added). Paragraph (1), IIRIRA's waiver provision, states:

Notwithstanding any other provision of law, the Secretary of Homeland Security shall have the authority to waive all legal requirements such Secretary, in such Secretary's sole discretion, determines necessary to ensure expeditious construction of the barriers and roads under this section. Any such decision by the Secretary shall be effective upon being published in the Federal Register.

§ 102(c)(1).

Section 102(c)(2)(C) provides for direct review of the district court's decision by the Supreme Court: "An interlocutory or final judgment, decree, or order of the district court may be reviewed only upon petition for a writ of certiorari to the Supreme Court of the United States."

The statutory directive is clear:

- IIRIRA vests district courts with exclusive jurisdiction to hear claims "arising from" actions undertaken or decisions made "pursuant to" the waiver provision.

- This exclusive jurisdiction over claims "arising from" the waiver provision is limited to constitutional violations; there is no judicial review of non-constitutional claims "arising from" the waiver provision.

- The direct review provision applies only to those claims subject to the district courts' exclusive jurisdiction.

The jurisdictional bar and direct review provisions cover only claims "arising from" paragraph (1)'s waiver provision. Interpreting their scope requires determining when a claim "aris[es] from" the waiver provision.

A claim does not "aris[e] from" the waiver provision simply because it is *related to* or *concerned with* the Secretary's waiver determinations. The language used in section 102(c)(2)(A) requires more. The Ninth Circuit has noted that a related phrase, "arising out of," is "ordinarily understood to mean 'originating from,' 'having its origin in,' 'growing out of' or 'flowing from' or in short, 'incident to, or having connection with.'" *See In re Tristar Esperanza Props., LLC*, 782 F.3d 492, 497 (9th Cir. 2015) (quoting *Underwriters at Lloyd's of London v. Cordova Airlines, Inc.*, 283 F.2d 659, 664 (9th Cir. 1960)). Accordingly, a claim "aris[es] from" an "action undertaken" or "decision made[ ] by the Secretary . . . pursuant to" the waiver provision only when the claim originates or stems from a section 102(c)(1) waiver determination.[6]    Whether the jurisdictional bar

---

[6] In isolation, the reference in *Tristar* to "having connection with" might support a broader reading of this nexus requirement. 782 F.3d at 497.    However, context is key: the phrase follows four illustrative definitions, each describing an originating relationship, and then the

applies to California and the environmental groups' claims requires us to assess whether each claim "aris[es] from" the Secretary's waiver determinations.

One set of *ultra vires* claims alleges that the border barrier projects are not authorized by the grant of barrier- and road-building authority in sections 102(a) and 102(b). They challenge the scope of the Secretary's authority to build roads and walls under sections 102(a) and 102(b), not the scope of waiver authority under section 102(c). These claims thus "aris[e] from" sections 102(a) and 102(b), not section 102(c). Their origin is the initial decision to build the border barrier projects, not the later decision to issue a waiver related to those projects. In the absence of *any* relationship between these claims and the waiver provision, there is no plausible interpretation of "aris[es] from" that brings these claims under the jurisdictional bar. On the other hand, a second set of *ultra vires* claims alleges the waivers themselves were not authorized by the Secretary's authority under section 102(c)(1). *See, e.g.*, Second Am. Compl. at 34–38, *In re: Border Infrastructure Envtl. Litig.*, No. 3:17-cv-01215-GPC-WVG (S.D. Cal. Sept. 6, 2017). These claims do "arise from" the Secretary's waiver determination, so the district court correctly found that the jurisdictional bar applies.[7]

---

qualifier, "in short," which indicates that any subsequent terms are a mere rephrasing of the preceding substantive definitions.

[7] The district court was also correct in reasoning that the exception laid out in *Leedom v. Kyne*, 358 U.S. 184 (1958), does not create jurisdiction over these claims. *Leedom*'s extremely narrow exception would apply only if the waivers violated "'clear and mandatory' statutory language." *Pac. Mar. Ass'n v. NLRB*, 827 F.3d 1203, 1208 (9th Cir. 2016) (quoting *Leedom*, 358 U.S. at 188). Contrary to California

The environmental claims allege the planning and construction of the border barrier projects violated various environmental laws.  To the extent these claims challenge either the merits of the waivers themselves, or the Secretary's authority to issue the waivers under section 102(c), they are subject to the jurisdictional bar.  But, the analysis is different for the environmental claims that "aris[e] from" alleged violations of NEPA, CZMA, and the APA during the planning and construction of the border barrier projects.  At least some of the environmental claims clearly fall into this latter category.  For example, CBD raised NEPA and APA claims *before* the Secretary published the San Diego or Calexico Waivers, meaning the waivers could not possibly have been the source of these claims.  *See* First Am. Compl. at 3–4, 23–32, *In re: Border Infrastructure Envtl. Litig.*, No. 3:17-cv-01215-GPC-WVG (S.D. Cal. July 7, 2017).  To be sure, a valid waiver of the relevant environmental laws under section 102(c) is an affirmative defense to all the environmental claims.[8]  But the fact that the waivers may be dispositive of the environmental claims does not make a waiver the origin of those claims.

---

and the environmental groups' reading, it is far from "clear" that section 102(c)(1) does not authorize the waivers.  By authorizing any waiver "necessary to ensure expeditious construction of the barriers and roads under this section," section 102(c)(1) authorizes waivers to facilitate construction authorized by section 102(a), including the border barrier projects.

[8] California and the environmental groups point out that the environmental review requirements for NEPA and CZMA became effective for the border barrier projects before the agency issued the waivers.  But the waiver provision says nothing about *when* the agency must invoke its authority, and we strain to see what relief could be granted once DHS issued the waivers.

The black letter law of federal question jurisdiction illustrates why any other outcome would be at odds with well-accepted principles.  Under 28 U.S.C. § 1331, district courts have jurisdiction over all cases "arising under the Constitution, laws, or treaties of the United States."  A case does not "aris[e] under the Constitution, laws, or treaties of the United States" just because a defendant invokes a federal defense.  *See Louisville & Nashville R.R. v. Mottley*, 211 U.S. 149, 152 (1908).  For the same reason, the environmental claims do not "aris[e] from" the Secretary's waiver determinations merely because those waivers could provide the Secretary with a viable defense.

Finally, the constitutional claims, which allege that the waiver determinations themselves violate the U.S. Constitution, do "aris[e] from" the waiver determinations. *See, e.g.*, Compl. at 23, *Defs. of Wildlife v. DHS*, No. 3:17-cv-01873-GPC-WVG (S.D. Cal. Sept. 14, 2017) (arguing the San Diego and Calexico Waivers violate the Presentment Clause).  Because these claims grow out of the waiver determinations, IIRIRA's jurisdictional bar applies.  The district court had exclusive jurisdiction to hear those claims, and any appeal must be direct to the Supreme Court pursuant to section 102(c)(2)(C).  It is no surprise that California and the environmental groups did not appeal the constitutional claims to the Ninth Circuit.[9]

The jurisdictional bar and direct review provisions have no bearing on the *ultra vires* and environmental claims that

---

[9] The Animal Legal Defense Fund, CBD, and Defenders of Wildlife filed a petition for certiorari raising the constitutional claims, which the Supreme Court denied.  *Animal Legal Def. Fund v. DHS*, 139 S. Ct. 594 (2018).

do not "aris[e] from" the waiver determination.**[10]**    The district court had jurisdiction to review these federal claims under 28 U.S.C. § 1331.  We, in turn, have jurisdiction to consider this appeal from the "final decision[ ] of the district court[ ]" under 28 U.S.C. § 1291.

Nor does the APA bar our review.  California and the environmental groups seek relief for their *ultra vires* and environmental claims pursuant to the APA's cause of action. *See* 5 U.S.C. § 702.    DHS argues those claims are unreviewable because waiver determinations are made in the Secretary's "sole discretion," IIRIRA § 102(c)(1), which means they are "committed to agency discretion by law" and therefore exempt from the APA's cause of action.  *See* 5 U.S.C. § 701(a)(2).  However, this argument sidesteps the essence of the claims—that the border barrier projects are not authorized under section 102(a) or 102(b).  The predicate legal question of statutory authority is not committed to agency discretion, so California and the environmental groups' claims are reviewable.

Because neither IIRIRA nor the APA bar our review, we turn to the merits of the *ultra vires* and environmental claims.

## III.    DHS Has Authority to Construct the Border Barrier Projects

As noted, the *ultra vires* and environmental claims rely on the APA, which provides the analytical framework for considering these claims.  Under the APA, the operative

---

**[10]** This conclusion follows from the plain language of IIRIRA.  The strong presumption of judicial review of agency action further supports this outcome.  *See Cuozzo Speed Techs., LLC v. Lee*, 136 S. Ct. 2131, 2140 (2016).

question is whether the agency action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(A), (C).  The *ultra vires* claims relevant here allege DHS exceeded its statutory authority under sections 102(a) and 102(b).  The environmental claims allege the border barrier projects are "not in accordance with law" because their planning and construction violated NEPA and CZMA.

Section 102(a) vests the Secretary with authority to "take such actions as may be necessary to install additional physical barriers and roads (including the removal of obstacles to detection of illegal entrants) in the vicinity of the United States border to deter illegal crossings in areas of high illegal entry into the United States."

## A. The border barrier projects are "additional physical barriers."

The Secretary authorized the San Diego and Calexico Projects because the existing barriers in those areas were built in the 1990s using a fence design "that is no longer optimal for Border Patrol operations."  82 Fed. Reg. 35,985, 42,830.  According to DHS, the new construction erects stronger and taller barriers.  The Calexico Project will replace "[t]he existing fourteen foot, landing mat-style fencing . . . with an eighteen to twenty-five foot barrier that employs a more operationally effective design."  *Id.* at 42,830.  Similarly, the San Diego Project "will replace existing primary fencing" with a "new primary barrier" that "use[s] an operationally effective design."  *Id.* at 35,984–85. These are "additional physical barriers."

California and the environmental groups argue that the San Diego and Calexico Projects—which *replace* existing border fencing—are not authorized under section 102(a) because that section only applies to "*additional* physical barriers."[11]  They urge that "Congress understood the phrase 'install additional barriers' to mean the construction of barriers that would add to the total miles of already existing fences by installing new barriers where none existed at the time."

The plain language of section 102(a) suggests no such limitation.  In simple terms, "additional" means "supplemental."  *Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d 1467, 1472–73 (9th Cir. 1993) (quoting *Town of Burlington v. Dep't of Educ.*, 736 F.2d 773, 790 (1st Cir. 1984)).  A "barrier" is "a material object or set of objects that separates, keeps apart, demarcates, or serves as a unit or barricade." *See Barrier*, Webster's New Int'l Dictionary of the English Language (3d ed. 1993).  Combining the plain meaning of "additional" and "barrier" yields a "supplemental material object or set of objects that separates, keeps apart, demarcates, or serves as a unit or barricade."  A replacement fence fits comfortably within that definition.

That the statutory grant of authority extends beyond "install[ing] additional physical barriers" to "*tak[ing] such actions as may be necessary* to install additional physical barriers and roads" further supports this conclusion.  IIRIRA § 102(a) (emphasis added).   "[S]uch actions" include "remov[ing] . . . obstacles to detection of illegal entrants." *Id.*  It follows that authorization to "remov[e] . . . obstacles" and take other "actions . . . necessary to install . . . barriers

---

[11] They do not dispute that the Prototype Project is an "additional physical barrier."

and roads" extends beyond the erection of entirely new barriers and encompasses the maintenance, enhancement, and replacement of existing barriers.

Common sense also supports our analysis. To suggest that Congress would authorize DHS to build new border barriers but (impliedly) prohibit the maintenance, repair, and replacement of existing ones makes no practical sense. *See Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982) ("[I]nterpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available.").

### B. The projects are "in areas of high illegal entry into the United States."

The San Diego and Calexico Waivers cited data demonstrating that the border barrier projects are "in areas of high illegal entry." IIRIRA § 102(a); 82 Fed. Reg. 35,984, 42,830. In the U.S. Border Patrol's San Diego Sector, the location of the Prototype and San Diego Projects, the Border Patrol apprehended over 31,000 undocumented immigrants and seized approximately 9,167 pounds of marijuana and 1,317 pounds of cocaine in fiscal year 2016. 82 Fed. Reg. 35,984. In the El Centro Sector, the location of the Calexico Project, the U.S. Border Patrol apprehended over 19,000 undocumented immigrants and seized approximately 2,900 pounds of marijuana and 126 pounds of cocaine over the same period. *Id.* at 42,830. This is ample evidence of "high illegal entry" in these areas.

California and the environmental groups nonetheless contend the San Diego and Calexico Projects are not authorized by section 102(a) because they are not "in areas of high illegal entry into the United States." They do not dispute the evidence of "illegal entry" provided by DHS.

Nor do they dispute that the number of undocumented immigrants apprehended and the amount of illegal narcotics seized are objectively "high." Instead, they assert that the San Diego and El Centro statistics are not *comparably* "high" when measured against other sectors on the southwest border or the rates of illegal entry in these sectors in the past.

However, IIRIRA does not dictate that "high illegal entry" is a comparative determination. Absent qualification, "high illegal entry" means what it says. The fact that there are areas with "high*er* illegal entry" says nothing about whether the San Diego and El Centro sectors are "areas of high illegal entry." Even assuming that "areas of high illegal entry" are identified relative to other border sectors, San Diego and El Centro are in the top 35% of border sectors with respect to the number of undocumented immigrants apprehended. Finally, to the extent the challenge targets the Secretary's discretion in selecting where to exercise her authority under section 102(a), such an inquiry is foreclosed by IIRIRA's bar on probing the merits of a waiver determination, § 102(c)(2), and the APA's bar on reviewing discretionary agency action, 5 U.S.C. § 701(a)(2).

### C. Section 102(b) does not impose limits on Section 102(a)'s broad grant of authority.

Having determined that section 102(a)'s grant of authority encompasses the border barrier projects, we next consider whether section 102(b) imposes limits on that broad grant of authority. Section 102(b) provides in relevant part:

> (1) Additional fencing along southwest border.—

(A) Reinforced fencing.—In carrying out subsection (a), the Secretary of Homeland Security shall construct reinforced fencing along not less than 700 miles of the southwest border where fencing would be most practical and effective and provide for the installation of additional physical barriers, roads, lighting, cameras, and sensors to gain operational control of the southwest border.

(B) Priority areas.—In carrying out this section, the Secretary of Homeland Security shall—

(i) identify the 370 miles, or other mileage determined by the Secretary, whose authority to determine other mileage shall expire on December 31, 2008, along the southwest border where fencing would be most practical and effective in deterring smugglers and aliens attempting to gain illegal entry into the United States; and

(ii) not later than December 31, 2008, complete construction of reinforced fencing along the miles identified under clause (i).

The question is whether the fencing requirements and deadlines in section 102(b) establish limits applicable to section 102(a). They do not. Section 102(b)'s provisions for

priority projects do not swallow section 102(a)'s independent authorization to build "additional physical barriers." Congress's alternative use of the phrases "[i]n carrying out subsection (a)" and "this section" indicates that section 102(b) applies to some but not all of the construction authorized by section 102(a). In other words, section 102(a) is most plausibly read as a broad grant of authority to build border infrastructure, while section 102(b) merely denotes certain priority projects Congress intended DHS to complete first. Limits on the priority projects apply to those projects alone, not the wider universe of construction authorized by section 102(a).

The "general/specific canon" of statutory construction does not require a different interpretation. That canon provides that when two conflicting provisions cannot be reconciled, the more specific provision should be treated as an exception to the general rule. *See* Antonin Scalia & Bryan A. Gardner, Reading Law 183 (2012). Herein lies the rub. Sections 102(a) and 102(b) do not conflict. *See Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386–87 (2013) (explaining that, because the case did not fall within the specific provision, it was governed by the general provision and the "general/specific canon" was inapplicable).

Finally, the narrow interpretation offered by California and the environmental groups renders section 102(a) superfluous. If section 102(b) defines the entire scope of DHS's authority to build border infrastructure projects under section 102, section 102(a) would lack any independent effect. "[W]e are hesitant to adopt an interpretation of a congressional enactment which renders superfluous another portion of that same law." *Mackey v. Lanier Collection Agency & Serv., Inc.*, 486 U.S. 825, 837 (1988).

In short, the plain text of section 102(a) grants DHS authority to construct the Prototype, San Diego, and Calexico Projects, and that grant of authority is not limited by section 102(b). The district court correctly granted DHS summary judgment on the *ultra vires* claims.

Having determined that the border barrier projects were authorized under section 102(a), we have little trouble concluding that the environmental claims were also properly dismissed. The Secretary has waived the legal requirements that California and the environmental groups allege DHS violated. *See* 82 Fed. Reg. 35,985 (waiving application of NEPA, CZMA, and the APA to the San Diego and Prototype Projects); *id.* at 42,830 (waiving application of NEPA and the APA to the Calexico Project). And of course, we lack jurisdiction to consider any argument challenging the waivers themselves.

Finally, California and the environmental groups argue that because their environmental claims challenge DHS's plans to replace fourteen miles of secondary fencing in San Diego, and DHS concedes that the San Diego Waiver did not extend to those plans, the San Diego Waiver does not provide a defense to the environmental claims as applied to the secondary fencing. We need not reach this challenge because, as of the time of this appeal, DHS's plans to replace the secondary fencing, including whether to comply with NEPA and CZMA, are not yet "final" agency actions for purposes of the APA. *See* 5 U.S.C. § 704 ("Agency action made reviewable by statute and *final agency action* for which there is no other adequate remedy in a court are subject to judicial review." (emphasis added)); *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (explaining that final agency action both represents the consummation of the agency's decision-making process and has legal effect).

## CONCLUSION

The plain language of section 102 dictates the outcome of this appeal.  We have jurisdiction to consider California and the environmental groups' *ultra vires* and environmental claims to the extent those claims do not "aris[e] from" the Secretary's waiver determinations under section 102(c).  The Prototype, San Diego, and Calexico Projects are authorized under section 102(a)'s broad grant of authority, which is not limited by section 102(b).  The environmental claims are precluded by the Secretary's waiver of NEPA, CZMA, and the APA.

**AFFIRMED.**

---

CALLAHAN, Circuit Judge, dissenting:

If we could reach the merits of these appeals, I would concur in my colleagues' opinion.  But I read Section 102 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") as limiting review of the district court's decision to review by certiorari in the Supreme Court.  Accordingly, I would dismiss these appeals.

As noted by my colleagues, we begin with the language of the statute:

(c) Waiver.—

(1) In general.—Notwithstanding any other provision of law, the Secretary of Homeland Security shall have the authority to waive all legal requirements such Secretary, in such Secretary's sole discretion, determines

necessary to ensure expeditious construction of the barriers and roads under this section. Any such decision by the Secretary shall be effective upon being published in the Federal Register.

(2) Federal court review.—

(A) In general.—The district courts of the United States shall have exclusive jurisdiction to hear all causes or claims arising from any action undertaken, or any decision made, by the Secretary of Homeland Security pursuant to paragraph (1). A cause of action or claim may only be brought alleging a violation of the Constitution of the United States. The court shall not have jurisdiction to hear any claim not specified in this subparagraph.

(B) Time for filing of complaint. . . .

(C) Ability to seek appellate review.—An interlocutory or final judgment, decree, or order of the district court may be reviewed only upon petition for a writ of certiorari to the Supreme Court of the United States.

IIRIRA § 102(c).

Section 102(c)(2)(A) first provides that district courts "shall have exclusive jurisdiction to hear all causes or claims arising from any action undertaken , or any decision made, by the Secretary of Homeland Security pursuant to paragraph (1)," and then states "[a] cause of action or claim

may only be brought alleging a violation of the Constitution of the United States." My colleagues do not think that the second clause modifies the district court's jurisdiction. Rather, the majority holds that the district court has jurisdiction to consider not just plaintiffs' constitutional claims, but also their *ultra vires* claims.

I have questions as to the majority's interpretation of the statute, but recognize that the presumption that Congress does not intend to deny all judicial review arguably provides a basis for the district court considering the plaintiffs' *ultra vires* claims. *See Leedom v. Kyne*, 358 U.S. 184, 190 (1958) (noting that courts "cannot lightly infer that Congress does not intend judicial protection of rights it confers against agency action taken in excess of delegated powers.").

But even accepting that the district court may consider some of plaintiffs' *ultra vires* claims, we do not have jurisdiction to review its decision. Section 102(c)(2)(C)'s direction is clear and unequivocal: "An interlocutory or final judgment, decree, or order of the district court may be reviewed only upon petition for a writ of certiorari to the Supreme Court of the United States." It covers all conceivable decisions by a district court: orders, decrees, and interlocutory and final judgments. It states that review is "only upon petition for a writ of certiorari." IIRIRA § 102(c)(2)(C). I read this subsection as requiring that for all actions filed in a district court that arise "from any action undertaken, or any decision made, by the Secretary of Homeland Security pursuant to paragraph (1)," appellate review is limited to the Supreme Court. IIRIRA § 102(c)(1). Moreover, as Congress has provided for appellate review, there is no reason not to abide by the statute's plain intent. *See Flores-Miramontes v. I.N.S.*, 212 F.3d 1133, 1136 (9th Cir. 2000) (noting that if plaintiff "can raise his claims

elsewhere . . . we need not read an exception into the jurisdiction-stripping provision at issue.").

The majority circumvents the statute's restriction on appellate jurisdiction by arguing that the *ultra vires* claims do not "arise out of" the Secretary's waiver of legal requirements under § 102(c)(1).  This ignores the obvious thrust of the plaintiffs' complaints, which challenge the Secretary's authority to "waive all legal requirements" on both constitutional and statutory grounds. Indeed, their claims under the National Environmental Policy Act, 42 U.S.C. § 4321 et. seq., the Administrative Procedure Act, 5 U.S.C. § 551 et. seq., and the Coastal Zone Management Act, 16 U.S.C. § 1451 et. seq.,  primarily assert that the Secretary cannot waive the procedural requirements of those statutes.

It is true that plaintiffs' assertions that the Secretary lacks any authority to construct border walls are arguably separate from plaintiffs' arguments concerning the Secretary's ability to waive legal requirements.  But these are weak secondary arguments that the district court and the majority correctly reject.  These are arguments that would be raised at different times, possibly in different fora, but for the Secretary's exercise of authority under § 102(c)(1).  Moreover, the district court's rejection of collateral or secondary arguments in litigation that primarily challenge the Secretary's exercise of authority under § 102(c)(1) remains subject to the appellate restriction in § 102(c)(2)(C).  One of the purposes of the restriction on appellate jurisdiction is to expedite appellate review and this purpose is compromised if the losing parties are allowed to seek review of some issues in the court of appeal and others in the Supreme Court.

Accordingly, I dissent from the majority's opinion because § 102(c)(2)(C) restricts appellate review of the district court's decisions in these cases to the Supreme Court.