**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ALLIANCE FOR THE WILD ROCKIES;
FRIENDS OF THE CLEARWATER;
WILDEARTH GUARDIANS,
   *Plaintiffs-Appellants,*

   and

CENTER FOR BIOLOGICAL DIVERSITY;
CASCADIA WILDLANDS,
   *Plaintiffs,*

   v.

KEN SALAZAR, in his official
capacity as United States Secretary
of the Interior; ROWAN GOULD, in
his official capacity as Acting
Director of the United States Fish
and Wildlife Service; UNITED
STATES FISH AND WILDLIFE SERVICE,
   *Defendants-Appellees,*

   and

IDAHO FARM BUREAU FEDERATION;
MONTANA FARM BUREAU
FEDERATION; MOUNTAIN STATES
LEGAL FOUNDATION; NATIONAL
RIFLE ASSOCIATION OF AMERICA;
SAFARI CLUB INTERNATIONAL;
WILDLIFE CONSERVATION GROUPS,
                    *Intervenors.*

No. 11-35661
D.C. Nos.
9:11-cv-00070-
DWM
9:11-cv-00071-
DWM

CENTER FOR BIOLOGICAL DIVERSITY;
CASCADIA WILDLANDS; WESTERN
WATERSHEDS PROJECT,
            *Plaintiffs-Appellants,*

and

ALLIANCE FOR THE WILD ROCKIES;
FRIENDS OF THE CLEARWATER;
WILDEARTH GUARDIANS,
                    *Plaintiffs,*

v.

KEN SALAZAR, in his official
capacity as United States Secretary
of the Interior; ROWAN GOULD, in
his official capacity as Acting
Director of the United States Fish
and Wildlife Service; UNITED
STATES FISH AND WILDLIFE SERVICE,
            *Defendants-Appellees,*

and

IDAHO FARM BUREAU FEDERATION;
MONTANA FARM BUREAU
FEDERATION; MOUNTAIN STATES
LEGAL FOUNDATION; NATIONAL
RIFLE ASSOCIATION OF AMERICA;
SAFARI CLUB INTERNATIONAL;
WILDLIFE CONSERVATION GROUPS,
                    *Intervenors.*

No. 11-35670
D.C. Nos.
9:11-cv-00070-
DWM
9:11-cv-00071-
DWM
OPINION

Appeal from the United States District Court
for the District of Montana
Donald W. Molloy, District Judge, Presiding

Argued and Submitted
November 8, 2011—Pasadena, California

Filed March 14, 2012

Before: Mary M. Schroeder, Stephen Reinhardt, and
Mary H. Murguia, Circuit Judges.

Opinion by Judge Schroeder

## COUNSEL

James J. Tutchton, Centennial, Colorado, and Amy Rae Atwood, Portland Oregon, for the plaintiffs-appellants Alliance for the Wild Rockies, et al.

David C. Shilton, Department of Justice, Washington, D.C., for the the defendants-appellees Ken Salazar, Secretary of the Interior, et al.

Steven J. Lechner, Lakewood, Colorado, for intervenors-appellees Safari Club International, et al.

## OPINION

SCHROEDER, Circuit Judge:

Plaintiff environmental groups seek to enjoin the implementation of a statute, Section 1713 of the 2011 Appropriations Act, that orders the Secretary of the Interior to remove a portion of a distinct population of gray wolves from the protections of the Endangered Species Act ("ESA") without

regard to any statute or regulation that might otherwise apply. Section 1713 effectively undid an earlier district court decision that found that such an action by the government, a "partial delisting," would violate the ESA. Plaintiffs brought this action contending that Section 1713 violates the separation of powers. The district court rejected plaintiffs' claims on the ground that Congress had acted within its constitutional authority to change the laws applicable to pending litigation. Because this case is controlled by *Robertson v. Seattle Audubon Society*, 503 U.S. 429 (1992), we affirm.

## I.  BACKGROUND

Over the last decade, the United States Fish and Wildlife Service ("FWS") has repeatedly attempted to remove all or parts of the distinct population of gray wolves in the northern Rocky Mountains from the protections of the ESA. These efforts have been struck down by the courts for violating the ESA. *See, e.g.*, *Defenders of Wildlife v. Sec'y, U.S. Dep't of Interior*, 354 F. Supp. 2d 1156 (D. Or. 2005); *Defenders of Wildlife v. Hall*, 565 F. Supp. 2d 1160 (D. Mont. 2008). In 2009, the agency issued what is known as the "2009 Rule," 50 C.F.R. Part 17, 74 Fed. Reg. 15,123. It designated a distinct population of gray wolves in the northern Rocky Mountains and removed ESA protection for all except those in Wyoming. The district court struck down the 2009 Rule as violating the ESA because the statute does not permit partial delisting of a distinct population segment. *Defenders of Wildlife v. Salazar*, 729 F. Supp. 2d 1207 (D. Mont. 2010). The federal government, the states of Idaho and Montana, and various intervenors appealed, and that appeal, consolidated at No. 10-35885, has been stayed pending resolution of this case.

Meanwhile, proponents of the 2009 Rule began exploring ways to delist the gray wolves through legislation. These efforts culminated in Section 1713 of the Department of Defense and Full-Year Continuing Appropriations Act of

2011, which the President signed into law on April 15, 2011. Pub. L. 112-10, 125 Stat. 38 (2011). Section 1713 orders the Secretary of the Interior to reissue the 2009 Rule without regard to the ESA and without judicial review. Section 1713 provides in its entirety:

> Before the end of the 60-day period beginning on the date of enactment of this Act, the Secretary of the Interior shall reissue the final rule published on April 2, 2009 (74 Fed. Reg. 15123 et seq.) without regard to any other provision of statute or regulation that applies to issuance of such rule. Such reissuance (including this section) shall not be subject to judicial review and shall not abrogate or otherwise have any effect on the order and judgment issued by the United States District Court for the District of Wyoming in Case Numbers 09–CV–118J and 09–CV–138J on November 18, 2010 [involving Wyoming's management plan for gray wolves].

*Id.*

On May 5, 2011, FWS complied with Section 1713 by reissuing the 2009 Rule. 50 C.F.R. Part 17, 76 Fed. Reg. 25,590. That same day, plaintiffs filed this suit challenging the constitutionality of Section 1713 under the separation of powers doctrine, and relying on *United States v. Klein*, 80 U.S. 128 (1871). On August 3, 2011, the district court granted summary judgment to the government defendants. *Alliance for the Wild Rockies, et al. v. Salazar*, 800 F. Supp. 2d 1123 (D. Mont. 2011). We review the legal ruling *de novo* and affirm.

## II.  ANALYSIS

The cornerstones of plaintiffs' separation of powers challenge were laid in the mid-19th century when the Supreme Court decided *United States v. Klein*, 80 U.S. 128 (1871) and

*Pennsylvania v. The Wheeling and Belmont Bridge Co.*, 59 U.S. 421 (1855).

In *Klein*, the Supreme Court struck down an act of Congress that dictated the result in pending litigation. The plaintiff in *Klein* sued the government for the proceeds of property sold during the Civil War. The suit was filed under a statute granting such a cause of action to noncombatant confederate landowners who could show proof of loyalty to the federal government. The Supreme Court, in an earlier case, had decided that receipt of a Presidential pardon was sufficient proof of "loyalty" under this law. The Court of Claims in *Klein* followed that decision and awarded recovery. While the government's appeal was pending, Congress passed a statute providing that no pardon could be admitted as proof of loyalty to the federal government and that acceptance of a pardon, under most circumstances, was conclusive evidence of disloyalty. The statute thus directed the Supreme Court and the Court of Claims to find that a claimant who had accepted a Presidential pardon was in fact disloyal and, therefore, not entitled to land sale proceeds. The newly enacted statute further directed the Supreme Court to dismiss any case, for want of jurisdiction, if the claimant had prevailed upon proof of loyalty by Presidential pardon.

In striking down the statute, the Supreme Court in *Klein* explained that the effect of the new law was to deny jurisdiction to the Supreme Court and Court of Claims in pending cases "solely on the application of a rule of decision, in causes pending, prescribed by Congress." *Id.* at 146. This, the Court held, Congress could not do: "It seems to us that this is not an exercise of the acknowledged power of Congress to make exceptions and prescribe regulations to the appellate power." *Id.* Because Congress had "prescribe[d] a rule for the decision of a cause in a particular way," Congress "passed the limit which separates the legislative from the judicial power," and the provision was declared unconstitutional. *Id.* at 146-47.

The Court in *Klein* had to distinguish *Wheeling Bridge*. There, the Court had originally held that a bridge was an obstruction to navigation. 59 U.S. at 429. Intervening legislation, however, made the bridge a post-road for passage of the United States mail and forbade users of the river from interfering with the bridge. The Court concluded in *Wheeling Bridge* that this new statute had changed the earlier law that the bridge was obstructing navigation. "[A]lthough [the bridge] still may be an obstruction in fact, [it] is not so in the contemplation of law." *Id.* at 430. The Court in *Klein* held *Wheeling Bridge* differed from *Klein* in a critically important aspect: Congress had changed the law, not told the Court that it should decide the case differently under the same law. "No arbitrary rule of decision was prescribed in [*Wheeling Bridge*], but the court was left to apply its ordinary rules to the new circumstances created by the act. In [*Klein*] no new circumstances have been created by legislation." *Klein*, 80 U.S. at 146-47.

*Klein*, however, has remained an isolated Supreme Court application of the separation of powers doctrine to strike down a statute that dictated the result in pending litigation. This court relied on *Klein* in *Seattle Audubon Society v. Robertson*, 914 F.2d 1311 (9th Cir. 1990), *rev'd*, *Robertson v. Seattle Audubon Society*, 503 U.S. 429 (1992) to strike down a statute enacted to affect pending environmental litigation aimed at restricting logging and protecting the endangered spotted owl. While the litigation was still ongoing, and after the environmental groups had won a preliminary injunction on the ground that there had been inadequate study of the logging's environmental effects, Congress intervened and passed section 318 of the Department of the Interior and Related Agencies Appropriations Act for Fiscal Year 1990, Pub. L. No. 101-121, 103 Stat. 701, 745-50 (1989) ("section 318"). Section 318 allowed logging in parts of the disputed spotted owl habitat. Section 318(b)(6)(A) specified how the environmental concerns in the pending litigation were to be satisfied and barred judicial review. It provided:

Without passing on the legal and factual adequacy of the Final Supplement to the Environmental Impact Statement for an Amendment to the Pacific Northwest Regional Guide-Spotted Owl Guidelines and the accompanying Record of Decision issued by the Forest Service on December 12, 1988 or the December 22, 1987 agreement between the Bureau of Land Management and the Oregon Department of Fish and Wildlife for management of the spotted owl, the Congress hereby determines and directs that management of areas according to subsections (b)(3) and (b)(5) of this section on the thirteen national forests in Oregon and Washington and Bureau of Land Management lands in western Oregon known to contain northern spotted owls is adequate consideration for the purpose of meeting the statutory requirements that are the basis for the consolidated cases captioned *Seattle Audubon Society et al., v. F. Dale Robertson*, Civil No. 89-160 and *Washington Contract Loggers Assoc. et al., v. F. Dale Robertson*, Civil No. 89-99 (order granting preliminary injunction) and the case *Portland Audubon Society et al., v. Manuel Lujan, Jr.*, Civil No. 87-1160-FR. The guidelines adopted by subsections (b)(3) and (b)(5) of this section shall not be subject to judicial review by any court of the United States.

Our court held that section 318 violated the rule in *Klein* in that it directed the court "to reach a specific result and make certain factual findings under existing law in connection with two cases pending in federal court." 914 F.2d at 1316. We noted that, although subsections (b)(2), (b)(3), and (b)(5) added additional requirements, the statute did not by its plain language repeal or amend the environmental laws underlying the litigation. *Id.*

The Supreme Court, however, told us the error of our ways. *Robertson*, 503 U.S. 429. The Court held that section 318

amended the law because subsections (b)(3) and (b)(5) replaced the legal standards underlying the old growth forest litigation. *Id.* at 437. The Court held that the rule of *Tennessee Valley Authority*, requiring repeal of a law to be explicit, did not apply because section 318 did not repeal, but "amended" or changed the environmental laws applicable to a specific case and therefore did not violate the constitutional prerogative of the courts. *Id.* at 440 (citing *TVA v. Hill*, 437 U.S. 153, 190 (1978)).

**[1]** Here, as in *Robertson*, Congress has directed an agency to take particular action challenged in pending litigation by changing the law applicable to that case. In *Robertson*, Congress replaced the environmental laws applicable to the spotted owl litigation with new provisions and effectively directed the agency to comply with the new provisions. Here, Congress has directed the agency to issue the rule "without regard to any other provision of statute or regulation that applies to issuance of such rule." This court has held that, when Congress so directs an agency action, with similar language, Congress has amended the law. *Consejo de Desarollo Economico, Mexicali v. United States*, 482 F.3d 1157, 1169 (9th Cir. 2007) ("[W]hen Congress has directed immediate implementation 'notwithstanding any other provision of law,' we have construed the legislation to exempt the affected project from the reach of environmental statutes which would delay implementation."). In *Consejo*, Congress directed the immediate commencement of a project to line a canal "notwithstanding any other provision of law." We relied upon our earlier decision in *Stop H-3 Ass'n v. Dole*, 870 F.2d 1419 (9th Cir. 1989) which upheld a statute that exempted a project from environmental laws. We said in *Consejo* that, like the legislation underpinning *Stop H-3*, "the 2006 Act does not direct us to make any findings or to make any particular application of law to facts. Rather, the legislation changes the substantive law governing pre-conditions to commencement of the Lining Project. As such, it does not violate the constitutional separation of powers." *Id.* at 1170; *see also Apache Survival Coal.*

*v. United States*, 21 F.3d 895, 902 (9th Cir. 1994) ("[L]ike in *Robertson*, the statute substituted preexisting legal standards that governed a particular project, in this case ESA and NEPA, with the new standards . . . ."). We must reach the same result here.

**[2]** Appellants' arguments that Section 1713 is a repeal rather than an amendment must fail for a similar reason. Congress did not repeal any part of the ESA. Rather, Congress effectively provided that no statute, and this must include the ESA, would apply to the 2009 rule. Congress thus amended the law applicable to the agency action.

Appellants also contend that the meaning and effect of the 2009 Rule as reissued under Section 1713 are unclear, and that ambiguity prevents the court from finding an amendment. We cannot agree. The meaning and intended effect of Section 1713 are perfectly clear. The partial delisting was to take effect within 60 days, with no court review or interference.

**[3]** Section 1713's bar to judicial review does not remove it from the broad safe harbor recognized in *Robertson*. The bar has the same purpose and effect as the statutory language in *Consejo* that directed agency action "without delay" and "notwithstanding any other provision of law." *See* 482 F.3d at 1168-69. As we stated in *Consejo*, particular language "is not dispositive." *Id.* There are no "magic words" that can sweep aside constitutional concerns. *See id.* Here, as in *Consejo*, however, it is clear that Congress intended to amend the law so as to avoid the usual course of administrative proceedings that include judicial review; otherwise, "it would have been unnecessary for Congress to act at all." *Id.* at 1169. The D.C. Circuit has reached the same conclusion when dealing with a statute that also stated, expressly, that an agency action "shall not be subject to judicial review." *Nat'l Coal. to Save Our Mall v. Norton*, 269 F.3d 1092, 1095 (D.C. Cir. 2001). In *National Coalition*, the court held that the preclusion of review tracked language elsewhere in the statute that the proj-

ect at issue "be 'constructed expeditiously' " and, therefore, "demonstrate[d] Congress's clear intent to go ahead" with the project "regardless of the . . . relation to pre-existing general legislation." *Id.* We agree with the D.C. Circuit that preclusion of judicial review indicates Congressional intent to change the law applicable to the project.

Section 1713 could be read to bar judicial review of even its own constitutionality. Such a construction would, of course, raise serious questions concerning the constitutionality of Section 1713. *See Webster v. Doe*, 486 U.S. 592, 603 (1988); *Johnson v. Robison*, 415 U.S. 361, 366 (1974). The government has disavowed this interpretation before the district court and this court. We reject any such interpretation.

**[4]** Finally, we observe that while Section 1713 bars judicial review of the reissuance of the 2009 Rule, the 2009 Rule does provide standards by which the agency is to evaluate the continuing viability of wolves in Montana and Idaho. *See, e.g.*, 74 Fed. Reg. 15,123 at 15,186. Review of any regulations issued pursuant to the Rule or of agency compliance with the standards, does not appear to be restricted. Section 1713 itself, however, ordering the Rule to issue without regard to the laws that might otherwise apply, is entitled to be enforced.

## III.  CONCLUSION

For the reasons given above, the decision of the district court is **AFFIRMED** and the motion for an injunction pending appeal is **DENIED** as moot.