**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CENTER FOR BIOLOGICAL
DIVERSITY,
              *Plaintiff-Appellant*,

              v.

DAVID BERNHARDT, in his
official capacity as Secretary of
the United States Department of
the Interior; U.S. DEPARTMENT
OF THE INTERIOR,
              *Defendants-Appellees*,

PACIFIC LEGAL FOUNDATION;
ALASKA OUTDOOR COUNCIL;
BIG GAME FOREVER; KURT
WHITEHEAD; JOE LETARTE;
SAFARI CLUB INTERNATIONAL;
NATIONAL RIFLE ASSOCIATION
OF AMERICA, INC.; STATE OF
ALASKA DEPARTMENT OF LAW,
              *Intervenor-Defendants-*
              *Appellees.*

No. 18-35629

D.C. No.
3:17-cv-00091-SLG

OPINION

Appeal from the United States District Court
for the District of Alaska
Sharon L. Gleason, District Judge, Presiding

Argued and Submitted August 5, 2019
Anchorage, Alaska

Filed December 30, 2019

Before:  Richard C. Tallman, Sandra S. Ikuta,
and N. Randy Smith, Circuit Judges.

Opinion by Judge Ikuta

# SUMMARY[*]

## Congressional Review Act / Jurisdiction

The panel affirmed in part, and dismissed in part, the district court's dismissal of the Center for Biological Diversity ("CBD")'s complaint that sought to compel the Department of the Interior to reinstate the Refuges Rule that prevented Alaska from applying certain state hunting regulations on federal wildlife refuges.

The Congressional Review Act ("CRA") was designed to give Congress an expedited procedure to review and disapprove federal regulations.  Before a rule can take effect, the promulgating Federal agency submits a report. After receiving the agency's report, Congress has a specified time period to enact a joint resolution that disapproves the regulation (the "Disapproval Provision"). Once an agency's rule has been disapproved by joint resolution, the agency may not reissue the same, or similar, rule unless the new rule is specifically authorized by a law enacted after the joint resolution disapproving the original rule (the "Reenactment Provision").

The U.S. Fish & Wildlife Services promulgated the Refuges Rule prohibiting Alaska's predator-control methods on national wildlife refuges, along with certain methods of hunting bears and wolves.  Congress passed, and the President signed, a Joint Resolution disapproving the Refuges Rule.

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

Generally, the panel held that it lacked jurisdiction over CBD's statutory claims and concluded that CBD's constitutional claims did not allege a plausible basis for relief.

The panel held that because CBD failed to allege an injury in fact that was more than speculative, it did not have Article III standing to challenge the Reenactment Provision. The panel therefore dismissed CBD's argument that the Reenactment Clause violated the nondelegation doctrine.

The panel turned next to CBD's claim that the Disapproval Provision and Congress' Joint Resolution violated the Take Care Clause of the U.S. Constitution. Concerning the CRA's jurisdiction-stripping-provision, which on its face barred judicial review of all challenges to actions under the CRA, including constitutional challenges, the panel presumed that Congress did not intend to bar constitutional review because the jurisdiction-stripping-provision did not include any explicit language barring judicial review of constitutional claims. CBD argued that the CRA and Joint Resolution violated separation-of-power principles because they interfered with the Executive Branch's duty under the Take Care Clause of the Constitution by preventing the Department of the Interior from implementing its constitutional duty to faithfully execute the laws by properly managing the federal wildlife refuge system. The panel rejected the argument because Congress properly enacted the Joint Resolution, thereby validly amending Interior's authority to administer national wildlife refuges in Alaska, and Congress, accordingly, did not prevent the President from exercising his constitutional duty to faithfully execute the laws. The panel concluded that because the Joint Resolution did not violate the Take Care Clause, CBD's complaint failed to state a claim that was plausible on its face.

Finally, the panel considered CBD's statutory claim that the Refuges Rule could not be submitted in accordance with CRA's provision at 5 U.S.C. § 801(d)(1), which specifies certain deadlines.  Joining other circuits, the panel held that federal courts do not have jurisdiction over statutory claims that arise under the CRA. The panel held that here where CBD challenged Congress's enactment of the Joint Resolution, and where Congress enacted a joint resolution of disapproval that was an action under the CRA, there was no jurisdiction to consider the claim.

## COUNSEL

Howard M. Crystal (argued), Center for Biological Diversity, Washington, D.C.; Collette Adkins, Center for Biological Diversity, Circle Pines, Minnesota; for Plaintiff-Appellant.

Benjamin Mandel Shultz (argued), Attorney; Michael S. Raab and Tara S. Morrissey, Appellate Staff; Bryan Schroder, United States Attorney; Joseph H. Hunt, Assistant Attorney General; Civil Division, United States Department of Justice, Washington, D.C.; for Defendants-Appellees.

David Deerson (argued), James S. Burling, Oliver J. Dunford, and Jeffrey W. McCoy, Pacific Legal Foundation, Sacramento, California; Jonathan Wood and Todd F. Gaziano, Pacific Legal Foundation, Arlington, Virginia; Zacharia Olson, Yturri Rose LLP, Ontario, Oregon; for Intervenor-Defendants-Appellees Pacific Legal Foundation, Alaska Outdoor Council, Big Game Forever, Kurt Whitehead, and Joe Letarte.

Michael T. Jean, National Rifle Association of America, Fairfax, Virginia; Anna M. Seidman and Jeremy E. Clare, Safari Club International, Washington, D.C.; for Intervenor-Defendants-Appellees Safari Club International and National Rifle Association of America, Inc.

Cheryl Rawls Brooking and Jessica M. Alloway, Assistant Attorneys General, Alaska Department of Law, Anchorage, Alaska, for Intervenor-Defendant-Appellee State of Alaska Department of Law.

## OPINION

IKUTA, Circuit Judge:

Enacted as part of the Contract with America Advancement Act of 1996, Pub. L. No. 104-121, 110 Stat. 847, the Congressional Review Act (CRA) was designed to give Congress an expedited procedure to review and disapprove federal regulations. 5 U.S.C. §§ 801–808. In 2017, Congress used this procedure to order the Department of the Interior (Interior) to rescind a regulation that prevented Alaska from applying certain state hunting regulations on federal wildlife refuges. The Center for Biological Diversity (CBD) brought this legal action to compel Interior to reinstate the rule. Because we lack jurisdiction over CBD's statutory claims and conclude that CBD's constitutional claims do not allege a plausible basis for relief, we affirm the district court's dismissal of CBD's complaint.

I

The CRA assists Congress in discharging its responsibilities for overseeing federal regulatory agencies. It provides that "[b]efore a rule can take effect, the Federal agency promulgating such rule shall submit" a report that includes "a concise general statement relating to the rule" and a "proposed effective date." § 801(a)(1)(A).[1] After receiving the agency's report, Congress has a specified time period to enact a joint resolution that disapproves the regulation and states that "such rule shall have no force or effect." § 802(a) (the "Disapproval Provision"). Typically, Congress has 60 days to exercise the Disapproval Provision. *Id.* But if an agency submits a rule to Congress during the final 60 days of a congressional session, or submits the rule when Congress is not in session, the 60-day clock does not start to run until the 15th day of the subsequent congressional session. § 801(d)(1)–(2)(A) (the "Carryover Provision").[2]

---

[1] This requirement that an agency submit its report before its rule can take effect does not apply to "any rule that establishes, modifies, opens, closes, or conducts a regulatory program for a commercial, recreational, or subsistence activity related to hunting, fishing, or camping." § 808(1). Such a rule will "take effect at such time as the Federal agency promulgating the rule determines." *Id.*

[2] Section 801(d)(1)–(2)(A) provides:

> (d)(1) In addition to the opportunity for review otherwise provided under this chapter, in the case of any rule for which a report was submitted in accordance with subsection (a)(1)(A) during the period beginning on the date occurring–
>
> (A) in the case of the Senate, 60 session days, or

If the House and Senate pass a joint resolution of disapproval, and the President signs it into law, the agency's rule "shall not take effect (or continue)." § 801(b)(1); *see also* U.S. Const. art I, § 7, cl. 3. Once an agency's rule has been disapproved by joint resolution, the agency may not reissue the same rule "in substantially the same form," and may not issue "a new rule that is substantially the same" as the disapproved rule "unless the reissued or new rule is specifically authorized by a law enacted after the date of the

---

> (B) in the case of the House of Representatives, 60 legislative days,
>
> before the date the Congress adjourns a session of Congress through the date on which the same or succeeding Congress first convenes its next session, section 802 shall apply to such rule in the succeeding session of Congress.
>
> (2)(A) In applying section 802 for purposes of such additional review, a rule described under paragraph (1) shall be treated as though–
>
> > (i) such rule were published in the Federal Register (as a rule that shall take effect) on–
> >
> > > (I) in the case of the Senate, the 15th session day, or
> > >
> > > (II) in the case of the House of Representatives, the 15th legislative day,
> >
> > after the succeeding session of Congress first convenes; and
> >
> > (ii) a report on such rule were submitted to Congress under subsection (a)(1) on such date.

joint resolution disapproving the original rule." 5 U.S.C. § 801(b)(2) (the "Reenactment Provision").

The CRA streamlines Congress's typical procedure for enacting legislation. For instance, the CRA limits debate on a joint resolution "to not more than 10 hours," § 802(d)(2), and allows the Senate to take a joint resolution away from a Senate committee after 20 days and place it on the calendar for consideration by the full Senate on the vote of 30 Senators, § 802(c). The CRA declares that this accelerated procedure is "an exercise of the rulemaking power of the Senate and House of Representatives, respectively," and invokes the constitutional authority of Congress to amend its rules of procedure. § 802(g); *see* U.S. Const. art I, § 5, cl. 2 ("Each House may determine the Rules of its Proceedings . . . .").

As part of its effort to ensure an expedited process, the CRA provides that "[n]o determination, finding, action, or omission under this chapter shall be subject to judicial review." 5 U.S.C. § 805 (the "Jurisdiction-Stripping Provision").

II

This case stems from conflict over the management of wildlife in national wildlife refuges in Alaska. Congress has authority under the Property Clause of the Constitution to "make all needful Rules and Regulations respecting the Territory or other Property belonging to the United States." U.S. Const. art. IV, § 3, cl. 2. Federal statutes applicable to the national wildlife refuges at issue in this case include the National Wildlife Refuge System Administration Act of 1966, Pub. L. No. 89-669, 80 Stat. 926 (codified as amended

at 16 U.S.C. § 668dd–668ee (1998)), the National Wildlife Refuge System Improvement Act of 1997, Pub. L. No. 105-57, 111 Stat. 1252 (codified as amended at 16 U.S.C. § 668dd–668ee (1998)), and the Alaska National Interest Lands Conservation Act (ANILCA), Pub. L. No. 96-487, 94 Stat. 2371 (1980) (codified at 16 U.S.C. §§ 3101–3233). Each of these statutes authorizes Interior to manage the federal wildlife refuges for conservation and public use.

States also possess broad powers over fish and wildlife within their borders. *See, e.g.*, 16 U.S.C. § 668dd(m). Alaska's laws for managing wildlife are applicable in the national wildlife refuges in the state unless preempted by federal law. *See Kleppe v. New Mexico*, 426 U.S. 529, 542–43 (1976); *see also* 50 C.F.R. § 32.2(d). In 1994, the Alaska legislature authorized the Board of Game (Board) "to provide for intensive management programs to restore the abundance or productivity of identified big game prey populations as necessary to achieve human consumptive use goals." Alaska Stat. § 16.05.255(e) (2014). To that end, the Board permitted hunters to specifically target big game predators, like black bears, brown bears, and wolves. *See* Alaska Admin. Code tit. 5, §§ 92.110, 92.115, 92.124 (2019). Over the years, the Board has expanded its intensive management program and permitted hunters to engage in a range of predator-control activities.

Concerned that Alaska's intensive management program was "in direct conflict" with the federal mandate for administering national wildlife refuges, the Fish & Wildlife Service (FWS) promulgated an expansive new rule that substantially deviated from the state's regulations. *See* Non-Subsistence Take of Wildlife, and Public Participation and Closure Procedures, on National Wildlife Refuges in

Alaska, 81 Fed. Reg. 52248-01, 52252 (Aug. 5, 2016) (the "Refuges Rule") (codified at 50 C.F.R. § 36.32(b), repealed by 82 Fed. Reg. 52009-01(Nov. 9, 2017)).  The Refuges Rule prohibited Alaska's predator-control methods on national wildlife refuges, along with certain methods of hunting bears and wolves. 81 Fed. Reg. at 52252.  The Rule effectively prevented the Board from implementing Alaska's intensive management law on federal land.  *See id.*; Alaska Stat. § 16.05.255; Alaska Admin. Code tit. 5, §§ 92.106–92.127.

On October 5, 2016, consistent with the CRA, Interior submitted the Refuges Rule to Congress and the Comptroller General.[3]  At the time, less than 60 days remained in the 114th Congress.[4]  Therefore, the CRA's Carryover Provision applied and the 60-day clock would not start running until the 15th day of the subsequent congressional session. § 801(d)(1)–(2)(A).  In February 2017, within the time period established by the Carryover Provision, a joint resolution disapproving the Refuges Rule was introduced in the House of Representatives ("Joint Resolution").  H.R.J. Res. 69, 115th Cong. (2017); *see also* 5 U.S.C. § 801(d).  The House and Senate passed the Joint Resolution, and the President

---

[3] *See* 162 Cong. Rec. S6339-04, S6346 (daily ed. Nov. 15, 2016); 162 Cong. Rec. H6160-01, H6169 (daily ed. Nov. 14, 2016); *GAO Federal Rules Summary Listing*, U.S. GOV'T ACCOUNTABILITY OFF., http://www.gao.gov/fedrules/186189 (last visited Oct. 22, 2019).

[4] After October 5, 2016, less than 60 session days (Senate) and less than 60 legislative days (House of Representatives) remained before the 114th Congress adjourned on January 3, 2017.  *See Past Days in Session of the U.S. Congress*, CONGRESS.GOV, https://www.congress.gov/past-days-in-session (under "Senate," click the link next to 114th, 2nd Session; under "House," click the link next to 114th, 2nd Session) (last visited Oct. 22, 2019).

signed the Joint Resolution into law on April 3, 2017.  Pub. L. No. 115-20, 131 Stat. 86 (2017).

The Joint Resolution states:

> Providing for congressional disapproval under chapter 8 of title 5, United States Code, of the final rule of the Department of the Interior relating to "Non-Subsistence Take of Wildlife, and Public Participation and Closure Procedures, on National Wildlife Refuges in Alaska".

> *Resolved by the Senate and House of Representatives of the United States of America in Congress assembled*, That Congress disapproves the rule submitted by the Department of the Interior relating to "Non-Subsistence Take of Wildlife, and Public Participation and Closure Procedures, on National Wildlife Refuges in Alaska" (81 Fed. Reg. 52247 (August 5, 2016)), and such rule shall have no force or effect.

*Id.*

Following the enactment of the Joint Resolution, Interior promulgated an administrative rule rescinding the Refuges Rule and reverting "to the text of the regulations in effect immediately prior to the" Refuges Rule.  Effectuating Congressional Nullification of the Non-Subsistence Take of Wildlife, and Public Participation and Closure Procedures, on National Wildlife Refuges in Alaska Under the Congressional Review Act, 82 Fed. Reg. 52009-01, 52009 (Nov. 9, 2017).

In April 2017, CBD sued Interior in district court, seeking to reinstate the Refuges Rule.[5]  Five months later, CBD filed an amended complaint in which it alleged (1) the Joint Resolution and the CRA violate the Take Care Clause of the Constitution; (2) the CRA's Reenactment Provision suffered from unconstitutional vagueness (on appeal, CBD clarified that it was actually asserting a violation of the nondelegation doctrine); and (3) Interior acted *ultra vires* in adhering to the Joint Resolution and rescinding the Refuges Rule.   The district court granted Interior's motion to dismiss, holding that CBD failed to establish Article III standing and failed to state a claim.  CBD timely appealed.  We review the district court's order de novo.  *L.A. Lakers, Inc. v. Fed. Ins. Co.*, 869 F.3d 795, 800 (9th Cir. 2017).

III

We begin by considering the government's argument that we lack jurisdiction to consider CBD's claim that the Reenactment Provision violates the nondelegation doctrine, the rule that Congress cannot delegate its legislative powers unless it "lay[s] down by legislative act an intelligible principle to which the person or body authorized to [act] is directed to conform." *J.W. Hampton, Jr., & Co. v. United States*, 276 U.S. 394, 409 (1928).  The government argues that CBD lacks standing to raise this claim.  We review jurisdictional questions de novo.  *In re Gugliuzza*, 852 F.3d 884, 889 (9th Cir. 2017).

---

[5] The district court permitted several parties to intervene, including the Pacific Legal Foundation, Alaska Outdoor Council, Big Game Forever, Kurt Whitehead, Joe Letarte, Safari Club International, the National Rifle Association of America, and the State of Alaska.

"To establish standing, a plaintiff must present an injury that is concrete, particularized, and actual or imminent; fairly traceable to the defendant's challenged action; and redressable by a favorable ruling." *Horne v. Flores*, 557 U.S. 433, 445 (2009). Conjectural, hypothetical, or speculative injuries, such as "[a]llegations of possible future injury," do not suffice. *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990); *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). Rather, "[a] threatened injury must be certainly impending to constitute injury in fact." *Whitmore*, 495 U.S. at 158 (internal quotation marks omitted) (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)); *see also Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). A plaintiff must establish standing for every claim it wishes to challenge, even where a plaintiff raises the same legal challenge to multiple sections of the same statute. *Get Outdoors II, LLC v. City of San Diego*, 506 F.3d 886, 892 (9th Cir. 2007).

Here, CBD's challenge to the Reenactment Provision is legally distinct from its challenge to the Disapproval Provision and the Joint Resolution. Therefore, CBD must separately establish standing for its argument that the Reenactment Provision violates the nondelegation doctrine. *See id.* CBD argues it has adequately demonstrated standing because the Reenactment Provision deprives Interior of the ability to reissue the Refuges Rule "in substantially the same form," or to issue a new rule that is substantially the same as the Refuges Rule. 5 U.S.C. § 801(b)(2). As a result, CBD claims, the Reenactment Provision precludes Interior from protecting wildlife that CBD's members enjoy observing in the national wildlife refuges in Alaska. Accordingly, CBD's members have suffered a cognizable injury in fact due to the operation of the Reenactment Provision.

This argument fails because CBD's alleged injury rests on a speculative chain of future possibilities, which do not satisfy the requirements of Article III. *Whitmore*, 495 U.S. at 157–58. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice," *Lujan*, 504 U.S. at 561, but such allegations must "permit the court to infer more than the mere possibility of [injury]," *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). CBD's alleged injury here is premised on the assumption that Interior would reissue the Refuges Rule or a substantially similar rule if a court ruled that the Reenactment Provision were invalid. But CBD alleged no facts raising a plausible inference that Interior would take such steps, and thus has not "nudged" its claim of injury "across the line from conceivable to plausible." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Because CBD has failed to allege an injury in fact that is more than speculative, it does not have standing to challenge the Reenactment Provision. We therefore dismiss CBD's argument that the Reenactment Clause violates the nondelegation doctrine.

## IV

We next turn to CBD's claim that the Disapproval Provision and the Joint Resolution violate the Take Care Clause.

## A

We first consider whether the CRA's Jurisdiction-Stripping Provision bars review of this constitutional claim. The Jurisdiction-Stripping Provision provides that "[n]o determination, finding, action, or omission under this chapter shall be subject to judicial review." 5 U.S.C. § 805. On its

face, this language bars judicial review of all challenges to actions under the CRA, including constitutional challenges. The Supreme Court has held, however, that when we construe "a statute that purports to deny any judicial forum for a colorable constitutional claim," we apply a heightened standard. *Elgin v. Dep't of Treasury*, 567 U.S. 1, 9 (2012) (internal quotation marks omitted) (quoting *Webster v. Doe*, 486 U.S. 592, 603 (1988)). Under the applicable canon of statutory construction, "where Congress intends to preclude judicial review of constitutional claims its intent to do so must be clear." *Webster*, 486 U.S. at 603. In the absence of an explicit statutory provision that "bars judicial consideration of appellee's *constitutional* claims," *Johnson v. Robison*, 415 U.S. 361, 367 (1974) (emphasis added), we should conclude that Congress did not intend to "preclude consideration of colorable constitutional claims arising out of . . . actions" taken under a federal statute, *Webster*, 486 U.S. at 603. This rule of statutory construction is necessary to avoid "the serious constitutional question that would arise if we construed [a statute] to deny a judicial forum for constitutional claims." *Bowen v. Mich. Acad. of Family Physicians*, 476 U.S. 667, 681 n.12 (1986) (internal quotation marks omitted) (quoting *Weinberger v. Salfi*, 422 U.S. 749, 762 (1975)). Because "[i]t is presumable that Congress legislates with knowledge of [the Supreme Court's] basic rules of statutory construction," *McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 496 (1991), we may presume that Congress will use specific language if it intends to foreclose judicial review of constitutional claims. Here, the Jurisdiction-Stripping Provision does not include any explicit language barring judicial review of constitutional claims. Therefore, we presume that Congress did not intend to bar such review.

B

Because we are not barred from considering CBD's constitutional claim, we turn to CBD's argument that the CRA and Joint Resolution violate separation-of-powers principles because they interfere with the Executive Branch's duty under the Take Care Clause of the Constitution. *See* U.S. Const. art II, § 3 ("[The President] shall take Care that the Laws be faithfully executed . . . ."). As the Supreme Court has explained in analyzing similar claims, a court's understanding of "the reach and purpose" of the constitutional provision at issue (here, the Take Care Clause) must be informed by "[t]he separation-of-powers doctrine, and the history that influenced its design." *Boumediene v. Bush*, 553 U.S. 723, 746 (2008).

Congress delegated its authority under the Property Clause to manage the federal wildlife refuges in Alaska to the Executive Branch (i.e., Interior) pursuant to the National Wildlife Refuge System Administration Act, the National Wildlife Refuge System Improvement Act, and ANILCA. According to CBD, Congress did not amend those acts through the constitutionally required process of bicameralism and presentment, and therefore Interior retains all the authority delegated by Congress in those acts. By enacting the Joint Resolution, CBD contends, Congress required Interior to revoke a rule that Interior deemed necessary for managing the federal wildlife refuge system. Therefore, CBD argues, the Joint Resolution prevents Interior from implementing its constitutional duty to faithfully execute the laws.

This argument fails. When Congress enacts legislation that directs an agency to issue a particular rule, "Congress has

amended the law." *Alliance for the Wild Rockies v. Salazar*, 672 F.3d 1170, 1174 (9th Cir. 2012).  In *Alliance for the Wild Rockies*, Congress enacted legislation ordering the FWS to reissue a rule that had been struck down by a district court on the ground that it violated the Endangered Species Act.  *Id.* at 1173–74.  We held that the legislation effectively amended the Endangered Species Act.  *Id.* at 1175.  Moreover, we held that because the legislation changed the substantive law, it did "not violate the constitutional separation of powers" even though it "directed an agency to take particular action challenged in pending litigation by changing the law applicable to that case."  *Id*. at 1174.  For the same reason, validly enacted legislation that requires an agency to take a specified action does not impinge on the Take Care Clause or violate separation-of-powers principles.

Here, Congress complied with the process of bicameralism and presentment in enacting the Joint Resolution,[6] because the Joint Resolution passed both houses of Congress and was signed by the President into law.  By enacting the Joint Resolution, Congress amended the substantive environmental law and deprived the Refuges Rule of any force or effect.  Accordingly, the Joint Resolution is enforceable as a change to substantive law, even though it did not state that it constituted an amendment to the National Wildlife Refuge System Administration Act, the National Wildlife Refuge System Improvement Act, or ANILCA.

---

[6] Article I of the Constitution vests the legislative power in Congress and prescribes the process by which a bill becomes a law.  U.S. Const. art. I, §§ 1, 7.   Under the Presentment Clause, the House of Representatives and the Senate must each pass a bill, and then present it to the President, who may then sign the bill into law.  U.S. Const. art. I, § 7, cl. 2.  This process is referred to as bicameralism and presentment.  *See INS v. Chadha*, 462 U.S. 919, 951 (1983).

Because Congress properly enacted the Joint Resolution, and therefore validly amended Interior's authority to administer national wildlife refuges in Alaska, Congress did not prevent the President from exercising his constitutional duty to faithfully execute the laws. Indeed, the President now has the constitutional obligation to execute the Joint Resolution. U.S. Const. art II, § 3; *see also Alliance for the Wild Rockies*, 672 F.3d at 1174. Because the Joint Resolution does not violate the Take Care Clause, CBD's complaint fails to state a claim that is plausible on its face.

V

Finally we consider CBD's statutory claim. CBD claims that § 801(d)(1) (which allows Congress to disapprove of a rule introduced in the previous Congress) applies only to rules that were submitted "in accordance with" § 801(a)(1)(A) (which provides that "[b]efore a rule can take effect, the Federal agency promulgating such rule" must submit a specified report to Congress). According to CBD, the Refuges Rule could not be submitted "in accordance with" § 801(a)(1)(A), because that section requires a federal agency to submit a report to Congress "[b]efore a rule can take effect," but the Refuges Rule took effect on September 6, 2016, the date specified by Interior, nearly a month before the report was submitted to Congress. *See* Refuges Rule, 81 Fed. Reg. at 52248; 5 U.S.C. § 808 (providing that a rule relating to a "regulatory program" for hunting "shall take effect at such time as the Federal agency promulgating the rule determines"). Because the Refuges Rule was not eligible for disapproval in the new session of Congress, CBD argues, the Joint Resolution was invalid and it did not authorize Interior to rescind the Refuges Rule. Therefore, CBD

concludes, Interior acted *ultra vires* in rescinding the Refuges Rule pursuant to the (invalid) Joint Resolution.

Because this claim is based on the statute, we first consider whether the CRA's Jurisdiction-Stripping Provision bars judicial review. Congress is generally free to limit the jurisdiction of federal courts. *United States v. Hudson*, 7 Cranch 32, 33 (1812). But in order to do so, Congress must enact a statute that provides "clear and convincing evidence that Congress intended to deny" access to judicial review. *Bd. of Governors of Fed. Reserve Sys. v. MCorp Fin., Inc.*, 502 U.S. 32, 44 (1991). A statute provides such clear and convincing evidence, "and the presumption favoring judicial review [is] overcome, whenever the congressional intent to preclude judicial review is 'fairly discernible in the statutory scheme.'" *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 351 (1984) (quoting *Ass'n of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 157 (1970)).

Here, Congress's intent to preclude judicial review is "fairly discernible." Pursuant to the Jurisdiction-Stripping Provision, we are deprived of jurisdiction to review any claim challenging a "determination, finding, action, or omission" under the CRA. 5 U.S.C. § 805. In reaching this conclusion, we join our sister circuits which have likewise held that federal courts do not have jurisdiction over statutory claims that arise under the CRA. *See Montanans For Multiple Use v. Barbouletos*, 568 F.3d 225, 229 (D.C. Cir. 2009); *Via Christi Reg'l Med. Ctr., Inc. v. Leavitt*, 509 F.3d 1259, 1271

n.11 (10th Cir. 2007), *abrogated on other grounds by Azar v. Allina Health Servs.*, 139 S. Ct. 1804 (2019).[7]

Here, CBD challenges Congress's enactment of the Joint Resolution. Because enacting a joint resolution of disapproval is an action under the CRA, we lack jurisdiction to consider this claim.

CBD nevertheless argues that because the Refuges Rule was not eligible for disapproval in the new session of Congress, the Joint Resolution was not enacted "under" the CRA and therefore is not a "determination, finding, action, or omission under this chapter" for purposes of § 805. In making this argument, CBD relies on *In re Border Infrastructure Environmental Litigation*, which considered a jurisdictional bar imposed by the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA). 915 F.3d 1213, 1219–20 (9th Cir. 2019) (*BIEL*). The jurisdictional bar provided that "[t]he district courts of the United States shall have exclusive jurisdiction to hear all causes or claims arising from any action undertaken, or any decision made, by the Secretary of Homeland Security pursuant to" a statutory waiver provision giving the Secretary authority to waive certain legal requirements. *Id.* at 1220 (quoting IIRIRA § 102(c)(2)(A)). We held that a plaintiff's claim "arises from" the waiver provision, and is thus subject to the jurisdictional bar, only when the plaintiff challenges a waiver

---

[7] CBD argues that *Liesegang v. Sec'y of Veterans Affairs* held that courts have jurisdiction to consider statutory challenges to the CRA. 312 F.3d 1368, 1373 (Fed. Cir. 2002), *amended on reh'g in part*, 65 F. App'x 717 (Fed. Cir. 2003). We disagree; the plaintiffs in *Liesegang* did not raise this issue, and the Federal Circuit thus had no occasion to consider it. *Id.*

decision by the agency, not when the plaintiff challenges agency action authorized by some other part of the statute. *Id.* at 1220–21.

CBD contends that (like in *BIEL*) a plaintiff's claim is subject to CRA's Jurisdiction-Stripping Provision only if the plaintiff challenges an action under CRA. Because CBD is challenging Interior's rescission of the Refuges Rule and not any action under CRA, CBD argues, its claim is not barred. We disagree. CBD challenges Interior's rescission of the Refuges Rule solely on the ground that Congress did not validly enact the Joint Resolution. Therefore, CBD's claim necessarily involves a challenge to a congressional "determination, finding, action or omission" under the CRA, and as such is subject to the Jurisdiction-Stripping Provision. Accordingly, we lack authority to consider this claim. 5 U.S.C. § 805.[8]

\*\*\*

In short, Congress's efforts to exercise oversight of federal administrative agencies by means of the CRA are consistent with the "structure of this government, and the distribution of this mass of power among its constituent parts." The Federalist No. 47, p. 321 (James Madison) (Easton Press 1979). Congress can therefore use the streamlined procedure in the CRA to disapprove federal

---

[8] Because we lack jurisdiction to review CBD's statutory claim, we do not reach the question whether CBD's claim is non-justiciable under the Rules Clause, U.S. Const. art. I, § 5, cl. 2. *See Consejo de Desarrollo Economico de Mexicali, A.C. v. United States*, 482 F.3d 1157, 1172 (9th Cir. 2007) (interpreting the Rules Clause and concluding that "the Constitution textually commits the question of legislative procedural rules to Congress").

regulations without offending the Take Care Clause, and Congress has validly deprived us of jurisdiction to consider claims that it violated the CRA's statutory requirements.

**AFFIRMED IN PART; DISMISSED IN PART.[9]**

---

[9] Each party shall bear its own costs.